## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HAROON I. HAMEED,

     Plaintiff,

v.

MARYLAND STATE BOARD OF
PHYSICIANS ET AL.,

     Defendants.

Civil No. 25-1606-BAH

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Self-represented Plaintiff Haroon I. Hameed ("Plaintiff" or "Hameed") brought suit against the Maryland State Board of Physicians (the "Board"), Christine A. Farrelly ("Farrelly"), in her individual and official capacities as Executive Director of the Board, Doreen Noppinger ("Noppinger"), in her individual and official capacities as a compliance manager of the Board, Troy Garland ("Garland"), in his individual and official capacities as a compliance analyst of the Board, Alexandra Fota ("Fota"), in her individual and official capacities as a compliance analyst of the Board, and "John and Jane Doe Board Members" in their individual and official capacities as members of the Board (collectively "Defendants"). *See* ECF 1. Hameed brings a claim under 42 U.S.C. § 1983 alleging a violation of the Fourteenth Amendment's Due Process Clause (Count One) and "reputational harm and interference with livelihood" (Count Two), and a defamation claim under Maryland common law (Count Three) against Defendants arising from the Board's publication of certain information relating to Hameed and his practice of medicine. *See id.* at 3. Pending before the Court are four motions to dismiss. *See* ECF 9 (the Board's); ECF 17 (Fota and Noppinger's); ECF 26 (Farrelly's); and ECF 30 (Garland's). Hameed has filed an opposition to

the motions to dismiss, *see* ECF 21 (opposing ECFs 9 and 17); ECF 33 (opposing ECFs 26 and 30), and Defendants have filed replies, *see* ECF 24 (the Board's reply); ECF 25 (Fota and Noppinger's reply); ECF 34 (Farrelly and Garland's reply). Hameed has moved for leave to file surreplies.[1] *See* ECF 28 (motion to file a surreply to the Board, Fota, and Noppinger's replies); ECF 35 (motion for leave to file a surreply to Farrelly and Garland's reply). Hameed has also filed two motions for leave to file supplemental pleadings, ECFs 36 and 37, and for motion for judicial notice of adjudicative facts and a supplement thereto, ECFs 38 and 39. The Board, Farrelly, Fota, Garland, and Noppinger oppose Hameed's motion for judicial notice, ECF 40, and Hameed has filed a reply to their opposition, ECF 41.[2]

The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiff's motions to supplement his complaint are **GRANTED**, Plaintiff's motion for judicial notice is **DENIED**, Plaintiff's motions to file surreplies are **GRANTED**, and Defendants' motions to dismiss are **GRANTED**.

---

[1] Though surreplies are generally not permitted under Local Rule 105.2(a), "the Court in its discretion may allow a party to file a surreply." *Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citation omitted). Although "[t]his discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs, . . . courts have also used this discretion to permit *pro se* parties to file surreplies even where no [n]ew matters were raised in the reply brief." *Id.* (first citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004); and then citing *Williams v. Bartee*, Civ. No. CCB-10-935, 2011 WL 2842367, at *2 (D. Md. July 14, 2011), *aff'd sub nom. Williams v. Merritt*, 469 F. App'x 270 (4th Cir. 2012)). "Courts have also permitted pro se parties to file surreplies where the opposing party has not objected to the filing." *Id.* (citing *Zhang v. Sci. & Tech. Corp.*, 382 F. Supp. 2d 761, 767 (D. Md. 2005), *aff'd*, 174 F. App'x 177 (4th Cir. 2006)). Hameed is pro se and the Defendants have not objected to his motions for leave to file surreplies. Accordingly, the Court will grant Hameed's motions at ECFs 28 and 35.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

# I.    **BACKGROUND**

## A.    **Statutory Background**

This suit arises from a 2021 final order issued by the Board sanctioning Hameed for unprofessional conduct. By way of background, "Title 14 of the Maryland Code, Health Occupations Article establishes the State Board of Physicians as a state agency with the authority to license, investigate, and discipline physicians and other health care providers." *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 892 (4th Cir. 2015). The Board can comprise two kinds of disciplinary panels. *See* Md. Code Ann., Health Occ. ("HO") § 14-401(a). The first disciplinary panel conducts the investigation of a complaint lodged against a physician and decides whether to issue charges. *Id.* §14-401.1. The grounds for charges for which a physician can be sanctioned are set forth in § 14-404(a) of the Health Occupations Article. *See id.* § 14-404(a)(1)–(47). If charges are issued, the matter is referred to an administrative prosecutor, *see* COMAR 10.32.02.03.E(5)–(6), and the physician is served with notice of the charges, *see* Md. Code Ann., State Gov't ("SG") § 10-207(a); COMAR 10.32.02.03.E(7). The physician then may engage in a voluntary informal settlement process. *See* COMAR 10.32.02.03.E(9).

If the case does not settle, it is sent to the other disciplinary panel, which forwards the case to the independent Office of Administrative Hearings ("OAH") for an evidentiary hearing before an administrative law judge ("ALJ"). *See* SG § 10-205(a)(1); COMAR 10.32.02.04.B; *see also* HO § 14-405. The physician may be represented by counsel at the hearing. *See* HO §14-405(c). After the evidentiary hearing, the ALJ issues a proposed decision. SG §10-220(a); COMAR 10.32.02.04.B(1); *see also* HO §14-405(b). The parties may file written exceptions to the ALJ's proposed decision and if either party does so, an exceptions hearing is held before the disciplinary panel that did not vote to issue the charges. *See* SG § 10-216(a)(2); COMAR 10.32.02.05.B(1)–(2). If the administrative agency overrules the recommendation of an ALJ, the agency's decision

must be based on "substantial evidence." *Gabaldoni v. Bd. of Physician Quality Assurance*, 785 A.2d 771, 772 (Md. App. 2001) (quoting *Dep't of Health & Mental Hygiene v. Shrieves*, 641 A.2d 899, 908–09 (Md. App. 1994)). However, the agency must give "substantial deference" to an ALJ's findings based on the demeanor and credibility of the witnesses. *Id.*

After consideration of the proposed decision, the record in the case, the written exceptions, and a hearing, a final written decision is issued by the second disciplinary panel. *See* SG § 10-221; COMAR 10.32.02.05.C(1). The final decision must include findings of fact, conclusions of law, and the order itself, in addition to a written statement of appeal rights. *See* SG § 10-221(b). Subject to an order concluding that a physician violated §14-404 of the Health Occupations Article, the disciplinary panel may issue a sanction, including "plac[ing] any licensee on probation, or suspend[ing] or revok[ing] a license." HO § 14-404(a). If the disciplinary panel concludes that the physician is in violation of one or more grounds in § 14-404(a), the physician is entitled to judicial review of the Board's final order in the "circuit court for the county where any party resides or has a principal place of business." SG § 10-222(a)(1), (c); HO § 14-408(a). The circuit court may "reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision" is, among other things "unconstitutional," "results from an unlawful procedure," "is affected by any other error of law," or is "arbitrary or capricious." SG § 10-222(h)(3). "Except for its possibly peripheral influences on the final agency decision, the hearing before the ALJ does not concern" the reviewing court. *Md. Bd. of Physicians v. Elliott*, 907 A.2d 321, 340 (Md. App. 2006). If the physician receives an unfavorable decision from the circuit court, the physician may then appeal to the Appellate Court of Maryland. *See* SG § 10-223(b).

By statute, "any orders and findings that result from formal disciplinary actions" of licensees are public records, in addition to other information related to licensees. Md. Code Ann., Gen. Prov. ("GP") § 4-333(b)(7). Maryland law also requires that "[e]ach health occupations board shall post on the board's Web site each final, public order for a disciplinary sanction issued to a licensee or certificate holder." HO § 1-607. Likewise, the Health Occupations Article explicitly mandates that the "Board shall create and maintain a public individual profile on each licensee that includes . . . [a] summary of charges filed against the licensee" and "[a] description of any disciplinary action taken by the Board or a disciplinary panel against the licensee within the most recent 10-year period that includes a copy of the public order," in addition to other information. HO § 14-411.1(b)(1)–(2).

### B.    Factual Background

The Court accepts as true all well-pleaded facts in Hameed's complaint and draws all reasonable factual inferences in his favor. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). Hameed "was charged in 2020 by the [ ] Board with, among other things, addiction to or habitual abuse of narcotics (opioid addiction), habitual intoxication, and professional incompetence." ECF 1, at 5 ¶ 18. During the proceeding that followed, two experts testified that Hameed "neither suffered from addiction or habitual intoxication, and was not professionally incompetent." *Id.* ¶ 19. The ALJ recommended that the charges of professional incompetence and habitual intoxication be dismissed, although the ALJ did conclude that Hameed was "guilty of unprofessional conduct in the practice of medicine, that [Hameed] habitually abused CDS, and that [Hameed] provided professional services while using a narcotic in excess of therapeutic amounts and without valid medical indication." *Id.* at 5 ¶ 20; ECF 1-4, at 23.[3]

---

[3] "In reviewing a motion to dismiss, courts may consider documents referenced or relied upon in the complaint." *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 772 n.1 (D. Md. 2015) (citing

Despite the ALJ's negative conclusions as to the charges of habitual intoxication and physical incompetence, Hameed alleges that the Board "re-imposed the charge of habitual intoxication in the Board's final order," or the "2021 Final Order." *Id.* ¶ 22. The Board "suspended Plaintiff's license" to practice medicine "and later placed him on probation after reinstatement in 2021." *Id.* at 6 ¶ 24. Hameed's probation formally ended in 2025. *Id.* "Throughout the period of probation and beyond," the Defendants "continued to publicly display the dismissed charges of opioid addiction and habitual intoxication on" the Board's "physician verification portal and other public records." *Id.* ¶ 25.

Hameed "acknowledges that he did not seek judicial review of the 2021 Final Order" issued by the Board, and he specifies that this litigation "does not seek to overturn or modify that order." *Id.* at 5. "Instead, Plaintiff brings this Complaint to address the Board's continued and public dissemination of specific stigmatizing charges that were rejected by the ALJ, discredited by expert witnesses, and for which the last 5 years of supervision by direct or indirect Board-related and reporting providers and entities failed to show any proof of." *Id.* at 5–6. Hameed asserts that the Defendants "knew or should have known that these statements were false" in light of expert reports from their own consultants, the ALJ's findings rejecting the charges, and "five years of monitoring and clinical assessments by Board-affiliated providers, none of which corroborated the allegations." *Id.* at 7 ¶ 28.

---

*Abelman v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 660, 662 n.1 (D. Md. 2013)). Because the ALJ's decision is referenced in Hameed's complaint (and attached to it), and Defendants do not dispute its authenticity, the Court considers it. *See, e.g.*, ECF 1, at 5 ¶¶ 20, 22; ECF 1-4; ECF 9-1, at 7. Generally, however, "extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The Court thus declines to consider the other exhibits attached to Hameed's complaint in ruling on the pending motions.

Hameed claims these actions have caused him "reputational and economic harm well beyond the conclusion of formal disciplinary proceedings." *Id.* at 6. Specifically, he asserts that he "has been unable to renew his DEA license, which prevented him from practicing medicine and engaging in lucrative opportunities, including surgery center ownership and other medical practice-related business ventures." *Id.* ¶ 26. Hameed further alleges he has been "unable to secure users for a proprietary artificial intelligence-based medical charting application he developed" previously "valued at over $25 million," because decisionmakers will not engage with Hameed due to the Board's allegations, "[d]espite strong performance metrics, internal testing, and endorsements from industry leaders." *Id.* at 6–7 ¶ 27. "In multiple instances, parties conducting due diligence" regarding Hameed's venture "explicitly cited the Board's postings as the reason for disengagement." *Id.* Additionally, Hameed asserts that colleagues have withdrawn from the project due to concerns about reputational risk. *Id.*

### C. Procedural History

On May 19, 2025, Hameed filed his complaint pro se. *See* ECF 1. He brings three counts against Defendants. *See id.* at 7–9. In Count One, Hameed alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment, and brings an action under § 1983 for money damages. *See id.* at 7–8. Hameed asserts that "Defendants, acting under color of state law, published stigmatizing and false charges . . . on public platforms" which were "central to the deprivation of Plaintiff's liberty interest in practicing medicine and harmed his reputation and business" and caused him to suffer "economic loss and reputational damage." *Id.* at 7 ¶¶ 30–31, at 8 ¶ 33. Hameed contends that "Defendants failed to provide procedural safeguards before or after publishing these stigmatizing charges." *Id.* at ¶ 32.

In Count Two, Hameed attempts to assert another claim under § 1983 for "reputational harm and interference with livelihood," although he does not specify under which federal law or

7

constitutional provision his second §1983 claim arises. *See id.* at 8. Hameed contends that "Defendants' continued publication of defamatory content after internal and judicial review found it unproven constitutes a willful violation of Plaintiff's constitutional rights" and that Defendants "acted with deliberate indifference to Plaintiff's rights." *Id.* at ¶¶ 34, 36.

Finally, in Count Three, Hameed asserts a claim for defamation pursuant to Maryland common law. *See id.* at 8. He alleges that "Defendants published false statements regarding opioid addiction and habitual intoxication" and "did so knowing" the ALJ and expert witnesses found those charges unsupported. *Id.* ¶¶ 37–38. Hameed contends that "Defendants' statements were made with actual malice or reckless disregard for the truth" and that the "continued publication" of such statements "after reinstatement and probation ending in 2025 constitutes a new defamatory act within the statute of limitations." *Id.* ¶¶ 39, 40. For this claim, Hameed asserts that he "suffered damages of over $30 million, including . . . [l]ost income of $5 million," "[l]oss enterprise value of at least $25 million" related to his artificial intelligence medical charting company, and "additional reputational, economic, and emotional harm." *Id.* at 8–9 ¶¶ 1–3.

In addition to compensatory damages, Hameed asks the Court for punitive damages, declaratory relief, to "[o]rder Defendants to remove or correct public records that continue to state false charges," and an award of costs and attorneys' fees under 42 U.S.C. § 1988, along with "any other relief" the Court deems just and proper. *Id.* at 9. Hameed attaches six exhibits to his complaint, including his own curriculum vitae (Exhibit A), expert testimony (Exhibit B), joint stipulations of fact (Exhibit C), and the decision and recommended order (Exhibit D) from the administrative proceedings related to the Board's charges, a "Public Display of Disproven Addiction Charge" (Exhibit E), and pending "Maryland Physician Rehabilitation Program Records" (Exhibit F). *Id.* at 10.

8

The Defendants' motions to dismiss Hameed's complaint, ECFs 9, 17, 26, and 30, along with Hameed's variety of motions, including those to supplement his complaint and for judicial notice, are now ripe for the Court's resolution.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and the plaintiff bears the burden of demonstrating that this Court has the authority to hear the case. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)). "[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).

In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). And the Court liberally construes pleadings by pro se plaintiffs. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, "a pro se plaintiff must still prove that subject-matter jurisdiction exists." *Adams v. Royal Park Nursing & Rehab.*, No. 20-cv-634, 2021 WL 4462914, at *3 (W.D.N.C. Sept. 29, 2021).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal

conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).    A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).    At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    ANALYSIS

### A.    Motions for Leave to File Supplemental Pleadings

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).    "The court may permit supplementation even though the original pleading is defective in stating a claim or defense."    *Id.*    As the Fourth Circuit has explained, "[a] supplemental pleading differs from an amended pleading because it relates to matters occurring subsequent to the filing of the initial complaint." *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002).    But "[t]his distinction is of little practical significance, however, because the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly

identical." *Id.* "In either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . , such as prejudice to the defendants.'" *Id.* (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)). The decision to grant leave is committed to this Court's discretion. *See id.*

On September 24, 2025, Hameed filed his first motion for leave to file a supplemental pleading. *See* ECF 36. In his first motion, Hameed notes that "[o]n September 10, 2025, the Administrator of the Drug Enforcement Administration ('DEA') issued a Decision and Order revoking Plaintiff's DEA Certificate of Registration No. FH8064204 and denying pending and future applications." *Id.* at 4 ¶ 1. The proposed supplemental pleading also notes that "DEA's Office of the Administrator transmitted the Decision and Order to Plaintiff" on September 16, 2025. *Id.* ¶ 2. Hameed moves to supplement his complaint with this subsequent occurrence because the DEA's decision "supplements the allegations of ongoing harm in this case, including reputational and economic damages, by showing that Defendants' continued publication of stigmatizing and disproven allegations directly contributed to the DEA's action, thereby compounding Plaintiff's injuries." *Id.* at 1. Hameed attached the DEA's decision and order as an exhibit to the motion. *See id.* at 7–32. On November 16, 2025, Hameed filed a second motion for leave to file supplemental pleading. *See* ECF 37. Hameed seeks to add to his complaint that on "November 5, 2025, [the Centers for Medicare & Medicaid Services, or] CMS . . . notified Plaintiff that his Medicare enrollment . . . had been removed from active status." *Id.* at 4 ¶ 1. "PECOS system now shows that Plaintiff's Maryland enrollment has been revoked," which Hameed contends was done "solely because of the DEA's revocation of Plaintiff's registration." *Id.* ¶¶ 2, 3.

"A supplemental pleading under Rule 15(d) presents more recent events. Rule 15(d) thus promotes a complete adjudication of the dispute between the parties." *Wood v. Yancey*, No. 1:23CV462 (RDA/JFA), 2025 WL 2493327, at *2 (E.D. Va. Aug. 27, 2025) (emphasis omitted). "Motions to amend or supplement 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *Wood*, 2025 WL 2493327, at *2 (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)). Defendants have not objected to Hameed's proposed supplements, and the Court agrees that they are proper since they pertain to events that occurred subsequent to the filing of his complaint. *See* ECF 1 (original complaint filed on May 19, 2025); ECF 36 (attempting to add the DEA's decision transmitted to Hameed on September 16, 2025); ECF 37 (attempting to add CMS's notification to Hameed from November 5, 2025). Accordingly, the Court will grant Hameed's motions for leave to file supplemental pleadings.

### B.    Motion for Judicial Notice of Adjudicative Facts

On January 11, 2026, Hameed filed a motion for judicial notice of adjudicative facts. *See* ECF 38. Hameed attaches to his motion approximately 300 pages of "statutes, regulations, publicly available government records, official agency publications, court and administrative dockets, and objectively verifiable numerical data." *Id.* at 1. Hameed asks the Court to take judicial notice "pursuant to Federal Rule of Evidence 201" of "institutional, structural, and historical facts that provide necessary context for the Court's resolution of the pending Rule 12 motions and that courts in this Circuit routinely consider at the pleading stage." *Id.* at 1–2. On January 12, 2026, Hameed filed a supplement to his motion, striking and replacing two paragraphs of his motion for judicial notice. *See* ECF 39. Defendants oppose Hameed's motion on the

grounds that he "requests judicial notice of non-facts, facts that are disputed, and facts that are irrelevant to the case at hand and beyond the scope of the complaint." ECF 40-1, at 1.

Federal Rule of Evidence 201 governs the circumstances under which the Court may take judicial notice of an adjudicative fact, which "are simply the facts of the particular case." *See* Fed. R. Evid. 201(a) advisory committee note. At any stage of the litigation, a court may take judicial notice on its own and must take judicial notice "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)–(d). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The party requesting judicial notice of the fact bears the burden of proving that Rule 201's standard is satisfied." *Barnett v. United States*, 650 F. Supp. 3d 412, 440 (D.S.C. 2023), *aff'd*, 132 F.4th 299 (4th Cir. 2025).

"The consequences of a court taking judicial notice are significant. Where the trial court has taken judicial notice of a fact in a civil matter, the judge must instruct the jury to accept that fact as conclusive." *Id.* (citing Fed. R. Evid. 201(g)). "A court taking judicial notice may also preclude the introduction of evidence to disprove the noticed fact." *Id.* (citing Fed. R. Evid. 201(g) advisory committee note). "[A] 'tradition of circumspection' surrounds judicial notice of adjudicative facts, and courts should exercise caution in taking judicial notice, doing so only when the matter is beyond reasonable controversy." *Id.* (first citing Fed. R. Evid. 201(b) advisory committee note; and then citing *In re Harmony Holdings, LLC*, 393 B.R. 409, 412–13 (Bankr. D.S.C. 2008)).

Here, Hameed "has failed to explain the particular facts of the exhibits [he] wishes the court to notice—instead [he] asks the court to take judicial notice" of approximately 300 pages of

exhibits, or nine categories of facts listed by way of 26 paragraphs, *see* ECF 38, "in their entirety as opposed to noticing specific statements contained therein," *see Barnett*, 650 F. Supp. 3d at 440. "[A]sking the court to notice those documents in their entirety [is] disfavored because it could yield unforeseen repercussions later in the litigation or appeals." *Id.* (citing *Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490 (D.S.C. 2013)). Moreover, as Defendants' opposition points out, some of the information Hameed seeks judicial notice of are not matters beyond reasonable controversy. *See Barnett*, 650 F. Supp. 3d at 440. As the advisory committee notes to Rule 201 explain, "[t]he usual method of establishing adjudicative facts in through the introduction of evidence, ordinarily consisting of the testimony of witnesses." Fed. R. Evid. 201 advisory committee note. To dispense with that process through judicial notice, "[a] high degree of indisputability is the essential prerequisite." *Id.* A nongovernmental private database website, for example, such as "OpenTheBooks.com," does not satisfy this standard, even if it purports to provide data from "[p]ublicly available Maryland state employee payroll records." ECF 38, at 6 ¶ 11, at 257 (Exhibit D-11). *See Gaza v. LTD Fin. Servs., L.P.*, No. 8:14-CV-1012-T-30JSS, 2015 WL 5009741, at *2 (M.D. Fla. Aug. 24, 2015) ("Courts have long recognized that private, non-governmental websites are not the proper subject of judicial notice."); *Daniels v. Howe L. Firm, P.C.*, No. 115CV00827SCJRGV, 2016 WL 11581822, at *2 (N.D. Ga. May 17, 2016) (collecting cases), *report and recommendation adopted*, No. 1:15-CV-0827-SCJ, 2016 WL 11581982 (N.D. Ga. June 15, 2016).

Furthermore, it is not clear that much of the information Hameed requests judicial notice of is relevant to the litigation. "Adjudicative facts must, by definition, be relevant." *Barnett*, 650 F. Supp. 3d at 440 (quoting *United States v. LaRouche*, 4 F.3d 987 (table) (4th Cir. Sept. 13, 1993) (per curiam)). "Further, whether information is the proper subject of judicial notice depends on

14

the use to which it is put." *Id.* (quoting *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013), *abrogated on other grounds, as recognized in Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015)). Hameed does not specify how the information he includes in his motion is relevant to his case in chief, other than to note that "[t]he noticed facts provide essential context for evaluating Defendants' motions to dismiss" and "will assist the Court in understanding the statutory framework, institutional structure, and procedural realities underlying Plaintiff[']s allegations without resolving disputed issues of fact." ECF 38, at 10. *Cf. Loftus*, 989 F. Supp. 2d at 490 (D.S.C. 2013) ("The Court finds that the documents submitted by the FDIC are extensive . . . [and] Defendant has failed to satisfy its burden of demonstrating that each exhibit is relevant to the instant Motion . . . .").

Accordingly, the Court will deny Hameed's motion for judicial notice of adjudicative facts pursuant to Federal Rule of Evidence 201. The Court reiterates, however, that it takes all well-pled factual allegations in Hameed's complaint (and supplemental pleadings) and reasonable inferences flowing therefrom as true for the purposes of deciding the pending motions to dismiss. *See Vitol, S.A.*, 708 F.3d at 539.

## C.    Subject Matter Jurisdiction and *Younger* Abstention

Defendants advance several arguments for dismissal in their motions under both Rule 12(b)(1) and 12(b)(6), including that this Court lacks subject matter jurisdiction or should otherwise decline to exercise its jurisdiction. *See* ECF 9-1, at 10; ECF 17-1, at 11, 23–24; ECF 26-1, at 24–25; ECF 30-1, at 24–25. Although Defendants' arguments vary in some respects, they share a common theme: "Plaintiff is attempting to relitigate in federal court a case he lost before a State Board, approximately four years ago, which he did not appeal." ECF 9-1, at 9; *see also* ECF 17-1, at 10; ECF 26-1, at 10; ECF 30-1, at 10.

The Board first argues that this Court does not have subject matter jurisdiction over Hameed's lawsuit because "[t]here is no viable federal claim" in Hameed's complaint. ECF 9-1, at 11. It is true that "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under" § 1331. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "Federal jurisdiction requires that a party assert a *substantial* federal claim." *Id.* (emphasis in *Lovern*) (quoting *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988)). "[W]here a claim is obviously without merit," the Supreme Court has "preclude[d] a federal district court from exercising its jurisdiction," otherwise known as the "*Hagans* doctrine." *Id.* at 654–55 (citing *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)).

*Lovern v. Edwards* provides a salient example of the *Hagans* doctrine in action. In *Lovern*, the plaintiff sued the superintendent of a public school system in federal district court, asserting subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). *Id.* at 650. The plaintiff's complaint alleged, under § 1983, that the superintendent violated the plaintiff's constitutional rights by prohibiting the plaintiff from entering the property of the public school system. *Id.* The district court declined to exercise jurisdiction over the plaintiff's claims and dismissed the case without prejudice. *Id.* The Fourth Circuit affirmed the district court's decision, concluding that the plaintiff's "claims fail to pass muster under the substantiality doctrine." *Id.* at 650; *see also id.* at 654–55. In so holding, the court emphasized that the plaintiff "had recourse to appropriate state process to remedy any grievance arising from a school board's action against him." *Id.* at 655 n.11. "Virginia law provides for state court review of actions of a school board, and requires the state court to sustain such actions unless the board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion." *Id.* (citing Va. Code § 22.1–87).

16

The Fourth Circuit reasoned in *Lovern* that "[t]he *Hagans* doctrine of substantiality is especially important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Id.* at 655. "[F]ederal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice." *Id.* Hameed counters that jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 "because Plaintiff asserts claims under 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution." *See* ECF 21, at 19; ECF 33, at 31. But, as noted, "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)." *Lovern*, 190 F.3d at 654. Hameed's complaint must assert a "substantial federal claim," *see id.*, and the similarities between Hameed's federal claims and those asserted in *Lovern* are striking. Here, Hameed asserts a due process constitutional challenge under § 1983 that he could have asserted on appeal to the circuit court under Maryland law. *See* SG § 10-222(a)(1), (c), (h)(3); HO § 14-408(a). Indeed, Maryland law provides for thorough review of the actions of the Board and permits the Maryland judiciary to reverse or remand such actions if the Board acted unconstitutionally, among other things. *See* SG § 10-222(h)(3); *cf. Lovern*, 190 F.3d at 655 n.11. The Court thus finds this case indistinguishable from *Lovern* and concludes that Hameed's federal claims fail to pass muster under the substantiality doctrine.

Hameed contends that jurisdiction is nevertheless proper "under 28 U.S.C. § 1332 because the parties are diverse: Plaintiff is a resident of the District of Columbia, while all Defendants are residents of and perform their official duties within Maryland." ECF 33, at 31. And "[t]he amount in controversy exceeds $30 million," Hameed contends, "far surpassing the $75,000 threshold required for diversity jurisdiction." *Id.* Defendants respond that Hameed's complaint has "failed

to plead diversity jurisdiction (ECF 1, ¶ 9)." ECF 24, at 4 n.1. The Court agrees with Defendants, and Hameed "cannot supplement allegations found in a complaint by adding allegations through an opposition brief." *J&J Sports Prods., Inc. v. King*, Civ. No. ELH-14-953, 2014 WL 4269073, at *6 n.7 (D. Md. Aug. 27, 2014) (citing *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991)).[4]

The Fourth Circuit has held that a plaintiff who both "failed to plead diversity jurisdiction" and "also failed to plead facts from which the existence of such jurisdiction could properly be inferred" could not proceed in federal court under § 1332. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). "As the Supreme Court has consistently held, . . . state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Id.* (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828 (1989)). "[T]he existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Id.* (collecting cases). In addition to failing to assert the statutory basis for diversity jurisdiction, Hameed's complaint does not allege the citizenship, domicile, or residence of any defendant, and thus does not properly invoke the Court's diversity jurisdiction. *See* ECF 1, at 1–10. That is likely because "the complaint had, in fact, never been intended to invoke such jurisdiction, but had been drafted instead with deliberate intent to invoke only the supplemental jurisdiction of the court." *See Axel Johnson, Inc.*, 145 F.3d at 663.

---

[4] *But see Ford v. Master Sec. Co., LLC*, Civ. No. PWG-15-2220, 2016 WL 1752897, at *5 (D. Md. May 3, 2016). Although Hameed is proceeding pro se and the Court has an obligation to construe his findings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Hameed has properly filed motions to supplement his complaint in this litigation, *see* ECFs 36 and 37. Accordingly, the Court will not construe his opposition memorandum as a supplement to his complaint, even if his opposition memorandum did attempt to properly plead the Defendants' national citizenship and domicile.

Even assuming Hameed is correct that the Court has subject matter jurisdiction over this lawsuit, other doctrines counsel the Court from exercising that jurisdiction here. *Moore v. City of Asheville*, and its discussion of *Younger* abstention, is squarely on point. 396 F.3d 385 (4th Cir. 2005). There, the plaintiff was cited for violating a city noise ordinance, a decision which could be appealed to a city ordinance board and then further to the city manager. *Id.* at 388. North Carolina common law permitted "judicial review of the [c]ity [m]anager's decision by a writ of certiorari issued by a state Superior Court." *Id.* (citation omitted). The plaintiff in Moore paid the first citation without challenge. *Id.* He appealed the second citation to the board but paid it without further review after the board affirmed the violation. *Id.* "Rather than pursuing further his rights of state administrative appeal and judicial review, [the plaintiff] apparently let the times for taking appeal from his citations lapse, and he commenced this action in federal court." *Id.* at 389. The plaintiff there sued the city, the city manager, and the police department, and he challenged the constitutionality of Asheville's noise ordinance as applied to him. *Id.* The district court dismissed certain defendants, but stayed the remainder of the case under the principles of *Younger* abstention pending the outcome of the state proceedings, even though "it was certain that no state proceedings were pending and that the times for appealing the citations had elapsed." *Id.* at 390.

On appeal, the Fourth Circuit considered whether *Younger* abstention compelled such a result. "Stated simply, the *Younger v. Harris* doctrine holds that 'a federal court should abstain from interfering in a state proceeding . . . if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Id.* (quoting *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003)). The plaintiff in *Moore* contended "the district court

erroneously applied the doctrine of *Younger v. Harris* because that doctrine applies only to protect ongoing state proceedings from federal interference." *Id.* at 391. Although the Fourth Circuit recognized that the case didn't fall squarely within the situation contemplated by *Younger*, it observed that the Supreme Court had extended the doctrine in subsequent cases "to bar a federal action, even when the state court proceedings had ended by the time the federal complaint was filed, so long as the federal complaint was designed 'to annul the results of a state trial.'" *Id.* at 394 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975)).

The Fourth Circuit extended that rationale to state court administrative proceedings that had already concluded by emphasizing "*Younger*'s policy of commanding federal restraint when the federal action is duplicative, casts aspersion on state proceedings, disrupts important state enforcement efforts, and is designed to annul a state proceeding." *Id.* at 394–95. By initiating the suit in federal court after the state administrative agency reached its determination, the Fourth Circuit reasoned that the plaintiff's suit would "relitigate a dispute that has already been resolved" and "interfere[] with the State's interest in enforcing its substantive laws as well as its interest in enforcing those laws through available administrative procedures and in its own courts." *Id.* at 395. Of course, if the plaintiff's complaint in *Moore* had been wholly prospective, the Fourth Circuit agreed that *Younger* abstention principles would have no application. *See id.* at 396. But because the plaintiff there brought an as applied constitutional challenge, the court concluded that the plaintiff was "seek[ing] to annul the effects of the prior state administrative proceedings." *Id.*

So too here. Hameed's demand for monetary damages "are retrospective in that they seek to compensate [Plaintiff] for injury that has already occurred; they look backward toward a wrong committed in the past." *Id.* at 397 (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). Moreover, Hameed requests injunctive relief that would effectively annul the State administrative

proceedings insofar as he asks the Court to "[o]rder Defendants to remove or correct public records that continue to state false charges." *See* ECF 1, at 9. The Board, in light of the results of its statutory disciplinary process, is required by Maryland law to "post on the board's Web site each final, public order for a disciplinary sanction issued to a licensee or certificate holder." HO § 1-607. Similarly, the Board must "create and maintain a public individual profile on each licensee that includes . . . [a] summary of charges filed against the licensee" and "[a] description of any disciplinary action taken by the Board or a disciplinary panel against the licensee within the most recent 10-year period that includes a copy of the public order," among other things. HO § 14-411.1(b)(1)–(2). The only mechanism by which Hameed could have escaped the force of Maryland law on this point was by challenging the 2021 Final Order itself through the avenues of review in state court.[5]

Rather than attempt to distinguish this case from the teachings of *Moore*, Hameed's opposition memoranda confirms that Hameed's lawsuit is really an attempt to "relitigate a dispute

---

[5] The Court in *Moore* observed that "a defendant to a *coercive* state administrative proceeding must exhaust his state administrative and judicial remedies and may not bypass them in favor of a federal court proceeding in which he seeks effectively 'to annul the results' of a state administrative body." *Moore*, 396 F.3d at 388 (emphasis added) (citation omitted). The Court is satisfied that the administrative proceedings to which Hameed was subject, like those in *Moore*, were "unquestionably coercive." *See id.* at 395 n.4; *see also Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) ("The administrative hearing procedures are clearly coercive and 'judicial in nature'—not legislative." (citation omitted)). Although "[n]either *Moore* nor *Laurel Sand* lay out a clear method for determining whether a proceeding is remedial or coercive," "[c]ourts have found three factors relevant to determining whether administrative proceedings and subsequent state court review are remedial or coercive." *Dukes v. Maryland*, Civ. No. CCB-11-876, 2011 WL 4500885, at *4 (D. Md. Sept. 27, 2011). A coercive proceeding is generally one that (1) "has been initiated by the state, where the participation of the federal plaintiff in the state proceeding was 'mandatory,'" (2) "is itself the wrong which the federal plaintiff seeks to correct via injunctive relief," and (3) concerns "the commission by the federal plaintiff of some alleged 'bad act.'" *Id.* (citations omitted). The Court concludes that the Board's disciplinary proceeding, as set out by statute, is coercive, as it is state-initiated, effectively mandates the participation of the physician, is itself the process which Hameed effectively challenges here, and concerned Hameed's alleged commission of misconduct in violation of the Health Occupations Article.

that has already been resolved." *See Moore*, 396 F.3d at 395. For example, Hameed writes in his opposition that "there is good cause to believe" that Defendants engaged in "charge-stacking" throughout the disciplinary process, which is "directly related to the willful concealment and inaction despite exculpatory evidence" that Hameed alleges existed in his case. ECF 21, at 4. Hameed further asserts that the disciplinary processes for the Board established by the Maryland Code and implementing regulations "mandate confidentiality, timely notice, and a framework for exculpatory evidence to be considered." *Id.* at 5. However, that is exactly the kind of argument that Hameed should have litigated in an appeal of the Board's final order, *see* SG § 10-222(h)(3); it is not the appropriate subject of an attempted collateral attack on state administrative proceedings in federal court. That Hameed "did not avail himself of state-provided avenues for review can only cast aspersion on the State's 'capabilities and good faith,' and deprive the State of 'a function which quite legitimately is left [to the state appellate bodies], that of overseeing [agency] dispositions of constitutional issues which arise in civil litigation over which they have jurisdiction.'" *Moore*, 396 F.3d at 395 (quoting *Huffman*, 420 U.S. at 608). Moreover, any relief issued by this Court could impede the State's substantive interest "in ensuring that physicians, who violate the laws that the Board enforces, are regulated in order 'to protect the health, safety, and welfare of the public.'" ECF 9-1, at 13 (quoting HO § 1-102(a)). The relief Hameed seeks in federal court "would be duplicative, would disrupt the State's substantive policies, would offend the State's appellate processes, and would undo what the State has done by a now-nonappealable order." *Moore*, 396 F.3d at 395. Accordingly, the Court declines to exercise any subject matter jurisdiction it may have over Hameed's claims.

### D.    Statutes of Limitations

The Court is also compelled to dismiss Hameed's complaint because his claims are barred by the applicable statutes of limitations. "The raising of the statute of limitations as a bar to

plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (first citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978); and then citing 2A Moore's Federal Practice § 8.28, at 8–270 (2d ed. 1948)). "The Court must dismiss any claim filed after the statute of limitations period has expired." *Deramus v. Montgomery Cnty. Domestic Rels. Section*, Civ. No. GJH-18-2337, 2019 WL 2395311, at *2 (D. Md. June 5, 2019) (citing *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996)).

Hameed brings two kinds of claims—a constitutional claim under § 1983 and a state law defamation claim. *See generally* ECF 1. With respect to the former, "[t]he statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Deramus*, 2019 WL 2395311, at *2 (*Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015)). "In Maryland, the applicable statute of limitations is three years from the date of the occurrence giving rise to the cause of action." *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-101). With respect to Hameed's defamation claim, however, Maryland law mandates such an action "be filed within one year from the date it accrues." *See* CJP § 5-105. Generally, a "statute of limitations begins to run 'when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" *Deramus*, 2019 WL 2395311, at *2 (quoting *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)).

According to Hameed's complaint, the Board's final order was issued in 2021. ECF 1, at 5. Hameed's complaint was filed on May 19, 2025, over three years after the published final order

23

and thus after both the general three-year and specific one-year statute of limitations had run. *See id.* However, perhaps anticipating this issue as to his defamation claim,[6] Hameed notes in his complaint that "Defendants' continued publication after reinstatement and probation ending in 2025 constitutes a new defamatory act within the statute of limitations." *Id.* at 8 ¶ 41. Defendants contend that Hameed's approach to the statute of limitations applicable to his defamation claim is flawed. *See* ECF 9-1, at 17; ECF 17-1, at 19; ECF 26-1, at 18; ECF 30-1, at 18. Defendants have the better argument.

As noted, in a defamation action, "the Maryland statute of limitations begins to run when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff." *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997). "Under the 'single publication rule,' only one action for damages can be maintained as to any single publication." *Id.* (citing *Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984)); *see also Lokhova v. Halper*, 995 F.3d 134, 142 (4th Cir. 2021) ("The single publication rule 'permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons.'" (citation omitted)). Although

---

[6] Hameed's oppositions mostly fail to address the statute of limitations argument Defendants advance related to his § 1983 claims. *See* ECF 21 (discussing the statute of limitations as to his defamation claim); ECF 33, at 15–17 (same). To the extent Hameed mentions the statute of limitations applicable to § 1983, he appears to contend that a "continuing violation" approach is also applicable to his due process claim. *See* ECF 33, at 10, 26. However, the process at issue is necessarily confined to the 2020–2021 time period described in the complaint, and Hameed does not allege defects in any process that followed that period—primarily because he failed to utilize that process to appeal the Board's final order. *See Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 493 (W.D. Va. 2019) (agreeing that claims of due process violations in the initial decisional process accrue at the time of the initial decision, but observing that accrual might come later for defects alleged in an appeal process). Moreover, the Court has found no support in case law for Hameed's novel assertion that "[a]t each point that exculpatory evidence was transmitted to the Board, and it failed to act or continued disseminating inaccurate information, a new due process violation accrued," ECF 21, at 13, nor has the Court identified allegations in Hameed's complaint that would date any alleged failure to act beyond 2021.

"subsequent distribution of a defamatory statement may continue to increase plaintiff's compensable damages, . . . the subsequent distribution does not . . . start the statute of limitations running anew." *Lokhova*, 995 F.3d at 142 (internal quotation marks and citation omitted). "Under the 'multiple publication rule,' every sale or delivery of the defamatory article is viewed as a distinct publication which causes injury to the defamed person and creates a separate basis for a cause of action." *Hickey*, 978 F. Supp. at 235 (citing *Lewis v. Reader's Digest Ass'n, Inc.*, 512 P.2d 702, 705 (Mont. 1973)). "The great majority of the States now follow the single publication rule." *Morrissey*, 739 F.2d at 967 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 n.8 (1984)).

In the absence of governing authority, this Court has before predicted that the Maryland Supreme Court "would adopt the single publication rule." *Hickey*, 978 F. Supp. at 236. Over 25 years later, however, it appears that the Supreme Court of Maryland still has not had reason to address this question. For the reasons articulated by Judge Harvey in *Hickey*, the Court likewise concludes that the Supreme Court of Maryland would adopt the single publication rule if faced with the question today. *See id.* at 235–37. In sum, and "[a]s various courts have recognized, the multiple publication rule allows a plaintiff to harass a defendant by bringing numerous causes of action against the same defendant and also renders the statute of limitations in libel actions a nullity." *Id.* at 236 (first citing *Givens v. Quinn*, 877 F. Supp. 485, 488 (W.D. Mo. 1994); and then citing *Keeton v. Hustler Magazine*, 549 A.2d 1187, 1190 (N.H. 1988)). "[T]he single publication rule 'is the better rule because it reflects the facts of modern-day mass publishing and duplicating and gives effect to the policy of repose underlying the statute of limitations.'" *Id.* (quoting *Church of Scientology v. Minn. State Med. Ass'n Found.*, 264 N.W.2d 152, 155 (Minn. 1978)).

Applying the single publication rule to Hameed's defamation claim, the Court concludes that the complaint permits the inference that Defendants published "false statements regarding opioid addiction and habitual intoxication" in 2021 at the latest. *See* ECF 1, at 5, 8–9. Hameed's defamation claim is thus barred by Maryland's one year limitations period. And because Hameed's § 1983 claims are also barred under the applicable three-year statute of limitations, the Court concludes that all claims in Hameed's complaint are time-barred and thus must be dismissed.

## IV.   CONCLUSION

The Court need not address the numerous other arguments Defendants provide in support of their motions to dismiss Hameed's complaint. For the foregoing reasons, the Plaintiff's motions to supplement his complaint are granted, the Plaintiff's motion for judicial notice is denied, the Plaintiff's motions to file surreplies are granted, and the Defendants' motions to dismiss are granted. The Clerk will be directed to close this case.

A separate implementing order will issue.


Dated: January 30, 2026                                    /s/
                                             Brendan A. Hurson
                                             United States District Judge